**Benjamin GAL–OR, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

No. 09–869C.

United States Court of Federal Claims.

Feb. 28, 2011.

Benjamin Gal–Or, Bulacan, Philippines, pro se.

Scott D. Slater, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C.

## OPINION

BRUGGINK, Judge.

This is a *pro se* action brought by Benjamin Gal–Or, a retired professor and scientist. He claims that defendant has utilized his inventions without paying him compensation, thereby infringing on his patent and committing a taking under the Fifth Amendment of the United States Constitution. We dis-

missed plaintiff's initial complaint on June 25, 2010, and directed plaintiff to file an amended complaint setting out his claims with more precision. He did so on August 2, 2010. Before the court is defendant's motion to dismiss the amended complaint. For the reasons discussed below, we grant in part and deny in part defendant's motion.

## BACKGROUND [1]

In our previous order, we instructed plaintiff to identify what property interests he owns and that he claims were infringed upon, including a copy of any patents. We also ordered him to identify the dates of any patent issuances and whether they are foreign or domestic. Finally, we ordered plaintiff to assert when the claim accrued.

Plaintiff identifies the basis of his claims as United States Patent 5,782,431 ("the Patent"), which he co-owned with Dr. Valery Sherbaum and Dr. Michael Lichtsinder from 1998 to 2006, when the Patent expired because plaintiff chose to quit paying the required maintenance fees. Plaintiff alleges that at least six of his inventions have been, or are currently being, used by at least 35 different governmental agencies. These inventions, as described by plaintiff, are "Stealth," "Pure Jet Control," "Enhanced Survivability and Supermaneuverability," "RanPas supermaneuverability," "Cruise Missiles," and "Sea and Land Thrust Vector Control." Only Enhanced Survivability and Supermaneuverability, as well as Sea and Land TVC, were patent protected from 1998–2006. Before being protected by the Patent, plaintiff asserts that the information was contained in Israeli Patent Application ("IPA") 78402, which was filed in 1986. Plaintiff co-owned this patent with Technion Research and Development Foundation ("Technion"). The information this Israeli patent protected was eventually protected by the United States Patent. Plaintiff acknowl-

edges that he disseminated the information found in the IPA via multiple publications.

Plaintiff is a retired engineer and professor who has published numerous articles and had many speaking appearances in the United States and throughout the world. He describes at least fourteen occasions between 1986–1997 in which he voluntarily disclosed information regarding his inventions to representatives of the United States government and other third parties. Plaintiff catalogues these interactions, seminars, and meetings to demonstrate that defendant had the opportunity to utilize plaintiff's property in numerous government programs, thereby taking his property under the Fifth Amendment or violating his United States Patent protection.

After the IPA was first filed, co-owner Technion invited various experts [2] to inspect the plaintiff's models and view tests of flight inventions in plaintiff's laboratory. None of the experts signed a confidential or proprietary information disclosure agreement at that meeting. Later in 1986, after he met with these experts, plaintiff accepted a written invitation from the President of Boeing to discuss plaintiff's inventions. At that time, plaintiff entered into an agreement with Boeing that permitted Boeing to provide information regarding plaintiff's inventions to the United States government and to other third parties. Plaintiff provided Boeing hard copies of this information, which were labeled with his and his Israeli patent co-owner's names and were marked as "Confidential."

Plaintiff alleges that Boeing used his inventions in numerous products without mentioning him or giving him credit. The United States then used the products that Boeing provided, and plaintiff received no acknowledgment or compensation.[3] Plaintiff provides no specific date on which the government first began use of this information, but it appears that it was soon after his 1986 agreement with Boeing.

---

1. *Plaintiff's amended complaint is 41 pages long* with 47 pages of attachments. The facts are our best construction from that amended complaint. For purposes of the motion to dismiss, defendant has not contested the facts as presented there.

2. Experts from the Air Force, the Air Force Office of Scientific Research, and the European Office of Aerospace Research and Development attended.

3. Plaintiff dubs this an "unknowing taking" on the part of defendant.

In 1987, plaintiff met with Dr. Richey from the United States Air Force to discuss his flight inventions. As a result, plaintiff received $300,000 in funding for test flights between 1987–1992.[4] The results of these tests, according to plaintiff, caused an entire flight program to change its approach.[5] Again, plaintiff does not specify when these changes were implemented, but he relies on the fact that he provided the information and that defendant was thus aware of and able to utilize it.

In 1986 or 1987, plaintiff disclosed "confidential" information to General Dynamics, which he alleges made its way into defendant's aircraft program.[6] He then accepted an invitation to speak to 100 employees at Lockheed Martin, to whom he described more of his strategic and theoretical work. Plaintiff also provided this same information to General Dynamics, who, with Lockheed Martin, funded plaintiff's flight tests until 1997. Plaintiff assumes that the information resulting from these flight tests was influential in defendant's F–16 program.[7]

Plaintiff also disclosed information to twelve members of the United States Air Force in San Antonio, Texas. The Air Force continued to support and fund him, and plaintiff delivered prototypes of his inventions to defendant in August 1990. In 1994, plaintiff met with one of the directors at the Defense Advanced Research Project, Col.

Mike Francis, and discussed plaintiff's inventions. Plaintiff utilized his own homemade VHS cassettes to assist in the conversation. Further, in 1995, he was invited by Donald Dix to discuss his inventions at the Pentagon in Washington, D.C.[8] Throughout this same time period, he conducted numerous seminars for the FAA in which he freely shared information about his inventions. The result of these dialogues was $50,000 of funding for more test flights. This program was eventually cancelled.

One of the specific instances we directed plaintiff to explain in greater detail occurred in 1994 or 1995, when plaintiff accepted an invitation from NASA to speak at a seminar with fifty participants.[9] During this visit, he had a conversation with a NASA employee, Mr. Burcham, along with individuals representing two of NASA's clients. Apparently at their request for information, plaintiff told the men that they were asking him to produce Israeli classified material. Nevertheless, plaintiff agreed to submit to these individuals a classified report that contained the requested information. Afterwards, he had no further communication with the agency or the two client representatives.

Plaintiff later discovered that Mr. Burcham worked in the Department of Homeland Security. Mr. Burcham filed United States Patent 6126111, which plaintiff claims con-

---

4. There was apparently no confidentiality agreement executed regarding the flight tests.

5. During these Air Force-funded tests, a Mr. Baumann worked in plaintiff's lab in Germany for three months to assist in the funded experiments. Mr. Baumann, plaintiff alleges, regularly transmitted confidential reports back to Mr. Bowers, his supervisor in the Air Force, that provided information concerning plaintiff's experiments and inventions which plaintiff did not want publicized. Mr. Baumann then returned to the United States from Germany, where he gave a public lecture that included some of plaintiff's confidential information. Despite these actions, plaintiff continued to work with Mr. Baumann and Mr. Bowers, continued to accept funding, and continued in his research. He also continued to follow their instructions regarding what confidential information would be included in publications.

6. Around the same time, plaintiff spoke at Williams International Engine Company without a proprietary information disclosure agreement.

After sharing his information, he entered into an oral agreement that Williams International would provide defendant with plaintiff's inventions for small jet engines on cruise missiles. Plaintiff continued his many disclosures in August 1986, when he went to Pratt and Whitney in Florida and provided information to senior engineers about nozzles and other inventions. In 1994, plaintiff began what he calls a reeducation of United States engine experts.

7. Plaintiff offers no facts to support this allegation.

8. Plaintiff informed Mr. Dix that he had sole rights to the information that he shared as well as information he had previously disclosed to defendant.

9. At some point in the same time period, plaintiff claims he met with two men from NASA who went on to publish material for which plaintiff claims credit.

tains some of his own inventions. Plaintiff believes that the Air Force received the technology contained in this patent from him before 1995 and that the Air Force first used the information between 1989 to 1992 in an F–15 prototype. Defendant also utilized the information he provided to Mr. Burcham in 1994 or 1995 for production of the RQ–107 in 2005, which was revealed when NASA released a report in 2007. This report stated that the Department of Homeland Security created a "Propulsion–Controlled Aircraft Recovery project" in 2005 which apparently contains the same technological advances plaintiff provided in the 1994 or 1995 classified report.

The other allegation we specifically directed plaintiff to explain in more detail involved a disclosure of information between 1987 and 1992. During this time period, plaintiff provided information regarding rectangular nozzles to General Electric employees. General Electric, as a government contractor, then provided plaintiff's information to defendant, enabling defendant to produce the RQ–107, an aircraft that utilized plaintiff's inventions. Defendant first revealed the RQ–107 on December 4, 2009, the date plaintiff relies upon as the accrual date of this claim.

Plaintiff never received any payment for the use of his inventions. He therefore claims that the government violated his patent or committed a taking of his intellectual property.

## DISCUSSION

### 1. Plaintiff does not plead a Fifth Amendment taking.

■■■ We first address plaintiff's claim that defendant's alleged appropriation of plaintiff's inventions was a taking in violation of the Fifth Amendment of the Constitution. Property interests are not created by the Fifth Amendment, "[r]ather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law." *Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1001, 104 S.Ct. 2862, 81 L.Ed.2d 815 (1984);

*see also Zoltek Corp. v. United States*, 442 F.3d 1345, 1352 (Fed.Cir.2006). In *Zoltek* the Federal Circuit held that a patent infringement claim, which federal law creates, cannot be evaluated as a Fifth Amendment claim under the Tucker Act. Instead, congress provided 28 U.S.C. § 1498 (2006) to protect patent rights: "patent rights are a creature of federal law.... [C]ongress provided a specific sovereign immunity waiver for a patentee to recover for infringement by the government. Had congress intended to clarify the dimensions of the patent rights as property interests under the *Fifth Amendment*, there would have been no need" for the specific waiver of sovereign immunity. *Id.* We therefore grant defendant's motion to dismiss for lack of subject matter jurisdiction those claims that plaintiff alleges as Fifth Amendment takings.[10]

### 2. All but two of plaintiff's allegations are barred.

■■■ Every claim of which the United States Court of Federal Claims has jurisdiction "shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. Therefore, to be timely, plaintiff's claims must have accrued on or after December 16, 2003, six years prior to the filing of his initial complaint. In the case of patent infringement claims, the limitations period begins "with respect to any particular device covered by a patent ... at the point in time when that particular device was first procured or used by the government." *Starobin v. United States*, 662 F.2d 747, 749 (Ct.Cl. 1981). Moreover, "[a] claim first accrues when all events have occurred that underlie the plaintiff's action. The government's unauthorized use of a patented invention is not regarded as continuing in nature for purposes of the jurisdictional analysis arising from the statute of limitations." *Bissell v. United States*, 41 Fed.Appx. 414, 416 (Fed. Cir.2002) (citations omitted). This limitation period may only be tolled when "the government has concealed its acts" so the aggrieved party may have time to learn of the infringe-

---

**10.** To the extent plaintiff alleges a taking of property not covered by the Patent, the following

discussion regarding the statute of limitations disposes of these claims.

ment. *Bissell v. United States,* 2001 U.S. Claims LEXIS 276, at *9 (Sept. 28, 2001). Due to these accrual rules, we instructed plaintiff to more definitely state when defendant first began production that utilized his protected inventions.

■ Despite this instruction, in his amended complaint plaintiff maintains his focus on the transfer of information to defendant rather than the timing of when defendant first began production. To the extent that he has alleged dates of first production, it is evident that all but two of plaintiff's allegations are time barred, as all but two of the instances of production take place no later than 1996. Nonetheless, plaintiff contends that, although defendant began infringing upon his Patent in 1986, defendant continues to utilize this information, creating an ongoing infringement claim. Defendant, however, answers that a patent is not infringed by continual use and that all but two of plaintiff's claims accrued prior to December 16, 2003.

Plaintiff admits that defendant produced aircraft and other devices that utilized plaintiff's patent-protected inventions throughout 1986–1995. Plaintiff argues that the inventions are currently in use in new programs with new code names or have been "resurrected" after earlier programs were eliminated. Even though he was aware of the government producing items that allegedly utilized his inventions for years, he argues that a cessation and new beginning of production creates a new statute of limitations.

We disagree, as our precedent makes clear that "patent infringement is not a continuing violation; a patent can be taken only once." *Bissell,* 2001 U.S. Claims LEXIS 276 at *8 (citing *Starobin,* 662 F.2d at 749–50). Continual production or restarting production does not allow plaintiff to resurrect a stale claim before this court, especially when he freely declares he was aware that defendant was producing aircraft that utilized his information long before 2003. In fact, plaintiff describes himself as voluntarily reeducating defendant by providing defendant with information regarding his inventions.

*3. Plaintiff's Patent expired in 2006, causing any claims after 2006 to be moot.*

■ Plaintiff alleges that defendant began production of a new aircraft in 2009, an RQ–107, which infringed on the Patent. Plaintiff's Patent, however, expired in 2006, when he chose to cease paying the required maintenance fees to continue his patent protection. "An article that was once protected by a now-expired patent is no different from an article that has never received protection from a patent. Both are in the public domain." *Pequignot v. Solo Cup Co.,* 608 F.3d 1356, 1361 (Fed.Cir.2010); *see* 35 U.S.C. § 271(a) (2006) ("... whoever without authority makes, uses, offers to sell, or sells any patented invention ... during the term of the patent therefor, infringes the patent."). Thus, any allegations of infringement on the Patent after 2006 are barred. The production of the RQ–107 in 2009 occurred three years after the Patent expired. Therefore, we grant defendant's motion to dismiss in regard to any claims of patent infringement that occurred after July 2006.

*4. Defendant's alleged use of plaintiff's patented information in 2005 appears to state an actionable claim.*

■ Plaintiff alleges that the Department of Homeland Security's Aircraft Recovery Project, which first debuted in 2005, infringes upon the Patent. This project was announced via the "first-ever Government release about the existence/operation of the large STVS RQ–107 drone in Afghanistan."[11] Amend. Compl. 76. This claim would be timely, as the first production of this STVS RQ–107 allegedly occurred after December 2003. We therefore must determine whether this allegation states a claim upon which relief can be granted.

■ Generally, a complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the

---

11. We recognize that RQ–107 is the same aircraft number as the 2009 allegation that we have dismissed. The allegation regarding production for use in Afghanistan, however, occurred when plaintiff's patent was still active, and it falls within the six-year statute of limitations.

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* — U.S. —, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (quotations omitted). Because plaintiff appears *pro se,* however, his pleadings are held "to less stringent standards than formal pleadings drafted by lawyers." *Howard v. United States,* 74 Fed.Cl. 676, 678 (2006) (citing *Haines v. Kerner,* 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972)).

Although he does not specifically articulate how the Patent was infringed in the STVS RQ–107, plaintiff does state that he shared information about his inventions with NASA through a classified report and then never again heard from anyone who received that information. He alleges that the same NASA employee who received the information now works in the Department of Homeland Security and that the STVS RQ–107 utilizes the information he provided to NASA. Plaintiff does not articulate sufficient detail to establish liability for infringement, but that is not what is required at this stage of litigation; rather, all plaintiff must do is allege a set of facts that could, if proven to be true, lead to relief.

Given the relaxed pleading requirements for a *pro se* plaintiff, we find that this allegation, if accepted as true, states a claim upon which relief may be granted. We therefore deny defendant's motion to dismiss, but only in relation to this discreet allegation concerning the 2005 Aircraft Recovery Project production of the STVS RQ–107.[12]

*5. Plaintiff currently lacks standing to bring a patent infringement claim.*

■ In its motion to dismiss, defendant argues that because plaintiff co-owned the Patent with Dr. Valery Sherbaum and Dr. Michael Lichtsinder until it expired in July 2006, plaintiff lacks standing to bring an infringement claim. We therefore deem defendant's motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) also as a motion to dismiss for failure to join an indispensable party under Rule 12(b)(7). Plaintiff re-

sponds to this motion by providing signed and notarized documents from both co-owners which state that plaintiff may fully represent them in this action. In these documents, each co-owner agrees he or she will receive five percent of whatever plaintiff may recover in this lawsuit. Nevertheless, the documents do not constitute appearances by these individuals.

■ It is evident that every co-owner of a patent must be a party in a patent infringement lawsuit:

Only the entity or entities that own or control all substantial rights in a patent can enforce rights controlled by that patent, lest an accused infringer be subjected to multiple suits and duplicate liability. Thus all entities with an independent right to enforce the patent are indispensable or necessary parties to an infringement suit.

*IpVenture, Inc. v. Prostar Computer, Inc.,* 503 F.3d 1324, 1325 (Fed.Cir.2007) (citations omitted). "[A]s a matter of substantive patent law, all co-owners must ordinarily consent to join as plaintiffs in an infringement suit." *Ethicon, Inc. v. United States Surgical Corp.,* 135 F.3d 1456, 1468 (Fed.Cir.1998). A consequence of this rule is that "one co-owner has the right to impede the other co-owner's ability to sue infringers by refusing to voluntarily join in such a suit." *Id.* at 1468 (quoting *Schering Corp. v. Roussel–UCLAF SA,* 104 F.3d 341, 345 (Fed.Cir. 1997)); *see also Willingham v. Lawton,* 555 F.2d 1340 (6th Cir.1977) (holding in part that the patent co-owner must be joined involuntarily despite contractual agreement that one co-owner could bring a patent infringement claim unilaterally).

In lieu of immediately dismissing this case for failure to join necessary parties, the case will remain pending in order to afford an opportunity for Drs. Sherbaum and Lichtsinder to join as parties in this case. If Drs. Sherbaum and Lichtsinder have not filed a motion for joinder on or before April 1, 2011, we will issue an order to show cause why this

---

**12.** In its briefing, defendant conceded that if this claim was stated with sufficient specificity, it

would be a timely allegation against defendant.

complaint should not be dismissed pursuant to Rule 19.

## CONCLUSION

For the reasons discussed above, we grant in part and deny in part defendant's motion to dismiss. The co-owners of the Patent must file motions for joinder on or before April 1, 2011, or we will issue an order to show cause.